FILED

1   SANDRA R. BROWN
    Acting United States Attorney
2   LAWRENCE S. MIDDLETON
    Assistant United States Attorney
3   Chief, Criminal Division
    ELISA FERNANDEZ (Cal. Bar No. 172004)
4   Assistant United States Attorney
    Public Corruption & Civil Rights Section
5        1500 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-7383
7        Facsimile: (213) 894-8601
         E-mail:   elisa.fernandez@usdoj.gov
8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

2017 NOV 21   PM 4:24

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   UNITED STATES OF AMERICA,        No. 17 CR 00732 - SJO

13              Plaintiff,            PLEA AGREEMENT FOR DEFENDANT
                                      PROFESSIONAL COLLECTION
14              v.                    CONSULTANTS

15   PROFESSIONAL COLLECTION
     CONSULTANTS,
16
                Defendant.
17

18
         1.   This constitutes the plea agreement between defendant
19
     Professional Collection Consultants ("PCC" or "defendant") and the
20
     United States Attorney's Office for the Central District of
21
     California (the "USAO") in the investigation of a conspiracy to
22
     corruptly give, offer to give, and agree to give something of value,
23
     namely, money, to a person with intent to influence and reward an
24
     agent of an agency of the State of Arizona, which received in excess
25
     of $10,000 in federal funds during each one-year period from at least
26
     January 1, 2010 through December 31, 2013, in connection with a
27
     business, transaction, and series of transactions of the Arizona
28

1  state agency, having a value of $5,000 or more, that is, accessing a
2  federal information platform and federal and state databases to
3  obtain and disclose information without authorization to an employee
4  and agent of the defendant, that is quarterly wage and earnings
5  information for specified individuals, in violation of 18 U.S.C.
6  Section 371.  This agreement is limited to the USAO and cannot bind
7  any other federal, state, local, or foreign prosecuting, enforcement,
8  administrative, or regulatory authorities.

9  ~~2.~~  Defendant understands and agrees that this Agreement is
10  part of a "package deal" in which the disposition of the case against
11  defendant is tied to and conditioned on the disposition of the case
12  against Michael S. Flowers and others.  Accordingly, defendant and
13  the USAO agree that this Agreement and the obligations it creates
14  will not become binding on the USAO and defendant unless and until by
15  no later than October 31, 2017: (a) defendant executes this Agreement
16  and enters a guilty plea in accordance with this Agreement; (b)
17  Michael S. Flowers enters a guilty plea in accordance with a separate
18  plea agreement; and (c) non-prosecution agreements are signed with
19  two others.  Defendant acknowledges that defendant has discussed with
20  defendant's attorney, and carefully considered, the possible
21  advantages and disadvantages to defendant of entering into this
22  Agreement as part of the package deal; defendant is entering into
23  this Agreement as part of the package deal freely and voluntarily
24  because defendant believes this Agreement and the package deal to be
25  in defendant's best interests; and defendant is not entering into
26  this Agreement as part of the package deal because of threats,
27  coercion, or other undue influence by the USAO or by the other

28

1  defendants who are part of the package deal, their counsel, or anyone
2  acting on their behalf.

3                        DEFENDANT'S OBLIGATIONS

4      3.    Defendant agrees to:

5          a.    At the earliest opportunity requested by the USAO and
6  provided by the Court, appear and plead guilty to a single-count
7  information in the form attached to this agreement as Exhibit A or a
8  substantially similar form, which charges defendant with conspiracy
9  to commit federal program bribery in violation of 18 U.S.C. § 371.

10          b.    Not contest facts agreed to in this agreement.

11          c.    Abide by all agreements regarding sentencing contained
12  in this agreement.

13          d.    Appear for all court appearances, surrender as ordered
14  for service of sentence, obey all conditions of any bond, and obey
15  any other ongoing court order in this matter.

16          e.    Not commit any crime; however, offenses that would be
17  excluded for sentencing purposes under United States Sentencing
18  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
19  within the scope of this agreement.

20          f.    Be truthful at all times with Pretrial Services, the
21  United States Probation Office, and the Court.

22          g.    Pay the applicable special assessment at or before the
23  time of sentencing unless defendant lacks the ability to pay and
24  prior to sentencing submits a completed financial statement on a form
25  to be provided by the USAO.

26          h.    Recommend the court order defendant to pay a fine of
27  $350,000.  Within 7 days of the filing of this plea agreement with
28  the court, PCC will deposit the sum of $350,000 into the client trust

                                 3

1  account of attorney David W. Wiechert.  Attorney David W. Wiechert
2  will hold the $350,000 in trust until the clerk of court assigns a
3  criminal case number to the above matter.  No later than five (5)
4  days from the assignment of a criminal case number, Attorney David W.
5  Wiechert will promptly deposit the sum of $350,000 with the Clerk of
6  the Court, Fiscal Section.

7         i.   File within thirty days (30) days of the Court's entry
8  of a money order of forfeiture, as set forth in paragraph 4, below,
9  all forms noticing the California Secretary of State that the
10  defendant has elected to wind up, terminate and dissolve as a
11  California stock corporation, including, but not limited to the
12  filing of a Certificate of Election – Stock and a Certificate of
13  Dissolution.

14       4.   Defendant further agrees:

15       a.   To the Court's entry of a money order of forfeiture
16  against defendant, at or before sentencing, for $946,770.

17       b.   To remit the amount of $946,770 (the "Forfeited
18  Funds") to the United States no later than seven (7) days after the
19  signing of this plea agreement, which funds shall be applied to
20  satisfy the money judgment to be entered against defendant.  The
21  Forfeited Funds shall be remitted by check payable to the "United
22  States Marshals Service," and shall be delivered to AUSA Elisa
23  Fernandez

24       c.   To take whatever steps are necessary to pass to the
25  United States clear title to the Forfeited Funds, including, without
26  limitation, the execution of a stipulation for entry of the money
27  judgment described above, and the completing of any other legal

28

4

1  documents required for the transfer of title of the Forfeited Funds
2  to the United States.

3      d.   Not to contest any administrative forfeiture
4  proceedings or civil judicial proceedings commenced against the
5  Forfeited Funds pursuant to 18 U.S.C. § 981, should the government
6  opt to proceed against the Forfeited Funds in either manner.  With
7  respect to a money judgment for the Forfeited Funds described in this
8  plea agreement, defendant waives the requirements of Federal Rules of
9  Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture
10 in the charging instrument, announcement of the forfeiture at
11 sentencing, and incorporation of the forfeiture in the judgment.
12 Defendant acknowledges that forfeiture of the Forfeited Funds is part
13 of the sentence that may be imposed in this case and waives any
14 failure by the Court to advise defendant of this, pursuant to Federal
15 Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts
16 defendant's guilty plea.

17     e.   Not to assist any other individual in any effort
18 falsely to contest the forfeiture of the Forfeited Funds.

19     f.   That forfeiture of the Forfeited Funds shall not be
20 counted toward satisfaction of any special assessment, fine, costs,
21 or other penalty the Court may impose.

22                    THE USAO'S OBLIGATIONS
23 5.   The USAO agrees to:

24     a.   Not contest facts agreed to in this agreement.

25     b.   Abide by all agreements regarding sentencing contained
26 in this agreement.

27     c.   At the time of sentencing, provided that defendant
28 demonstrates an acceptance of responsibility for the offense up to

and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.    Recommend the court order defendant to pay a fine of $350,000.

e.    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. § 666(a)(1)(B), (a)(2), bribery concerning programs receiving federal funds; 18 U.S.C. § 1343, wire fraud; 18 U.S.C. § 1346, and honest services fraud; 18 U.S.C. § 981(a)(1)(C), arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 11 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider any uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

CORPORATE AUTHORIZATION

6.    Defendant represents that it is authorized to enter into this agreement.  On or before the change of plea hearing pursuant to this agreement, defendant shall provide the USAO and the Court with a notarized legal document certifying that defendant is authorized to enter into and comply with all of the provisions of this agreement.

6

1  Such resolution(s) shall designate a company representative who is
2  authorized to take the actions specified in this agreement, and shall
3  also state that all legal formalities for such authorizations have
4  been observed.

5                  ORGANIZATIONAL CHANGES AND APPLICABIITY

6      7.  This agreement shall bind defendant, its successor entities
7  (if any), and any other person or entity that assumes the liabilities
8  contained herein ("successors-in-interest").  Defendant or its
9  successors-in-interest, if applicable, shall provide the USAO and the
10 United States Probation Office for the Central District of California
11 with immediate notice of any name change, business reorganization,
12 sale or purchase of assets, divestiture of assets, or similar action
13 impacting their ability to pay the fine or affecting this agreement.
14 No change in name, change in corporate or individual control,
15 business reorganization, change in ownership, merger, change of legal
16 status, sale or purchase of assets, or similar action shall alter
17 defendant's responsibilities under this agreement.  Defendant shall
18 not engage in any action to seek to avoid the obligations and
19 conditions set forth in this agreement.

20                      NATURE OF THE OFFENSE

21     8.  Defendant understands that for defendant to be guilty of
22 the crime charged in Count One of the Information, that is,
23 conspiracy to commit federal program bribery in violation of Title
24 18, United States Code, Section 371, the following must be true:

25         a.   First, beginning on or about a date unknown, but at
26 least commencing on or before September 1, 2010 and ending on or
27 about August 27, 2013, there was an agreement between two or more
28 persons to commit federal program bribery;

1         b.    Second, defendant became a member of the conspiracy

2    knowing of its object and intending to help accomplish it; and,

3         c.    Third, one of the members of the conspiracy performed

4    at least one overt act for the purpose of carrying out the

5    conspiracy.

6    PENALTIES

7        9.   Defendant understands that the statutory maximum sentence

8    that the Court can impose for a violation of Title 18, United States

9    Code, Section 371, is: five years probation; a fine of $500,000 or

10   twice the gross gain or gross loss resulting from the offense,

11   whichever is greatest; and a mandatory special assessment of $100.

12   SUSPENSION, REVOCATION, AND DEBARMENT

13       10.   Defendant understands that if defendant holds any

14   regulatory licenses or permits, the conviction in this case may

15   result in the suspension or revocation of those licenses and permits.

16   The USAO makes no representation or promise concerning suspension or

17   debarment of defendant from contracting with the United States or

18   with any office, agency, or department thereof.  Suspension and

19   debarment of organizations convicted under various federal

20   environmental protection and criminal statues is a discretionary

21   administrative action solely within the authority of the federal

22   contracting agencies.  Defendant understands that unanticipated

23   collateral consequences will not serve as grounds to withdraw

24   defendant's guilty plea.

25   FACTUAL BASIS

26       11.   Defendant admits that defendant is, in fact, guilty of the

27   offense to which defendant is agreeing to plead guilty.  Defendant

28   and the USAO agree to the statement of facts provided below and agree

1  that this statement of facts is sufficient to support a plea of

2  guilty to the charge described in this agreement and to establish the

3  Sentencing Guidelines factors set forth in paragraph 13 below but is

4  not meant to be a complete recitation of all facts relevant to the

5  underlying criminal conduct or all facts known to either party that

6  relate to that conduct.

7

8      Beginning on or before September 1, 2010, and continuing to at

9  least August 27, 2013, defendant PROFESSIONAL COLLECTION CONSULTANTS
("PCC"), through an agent of PCC, and others conspired to corruptly

10  give Coconspirator 1, an agent of a State agency, cash in exchange
for wage and earnings information per quarter and per employer for
specific Social Security numbers (collectively referred to as

11  "Confidential Information").

12      During the scope of the conspiracy, PCC was a California
corporation that operated as a debt collection company located at

13  6700 S. Centinela Avenue, 3rd Floor, Los Angeles, California.
Codefendant Michael S. Flowers, aka "Michael Flower" ("FLOWERS"), was

14  an employee and an agent of PCC.  FLOWERS worked as a debt collector

15  for PCC.  FLOWERS' responsibilities included determining the
collectability of debts serviced by PCC by searching massive public

16  and private/proprietary (pay for use) databases to locate debtors'
addresses and publically available information about each debtors'

17  financial resources.

18      From at least 2006 through August 27, 2013, Coconspirator 1 was

19  an employee and agent of the Arizona Department of Economic Security
("DES"), an agency of the government of the State of Arizona that

20  provided unemployment insurance ("UI") benefits.  DES maintained
unemployment data, wage and earning information, and processed UI

21  benefits using an information system ("GUIDE"), which was linked with
federal and state databases that contained Confidential Information

22  for individuals in all fifty states.  As an employee and agent of

23  DES, and in his role as a public official, Coconspirator 1 had access
to GUIDE and federal and state databases to locate Confidential

24  Information.

25      During the course of the conspiracy, FLOWERS and others offered
and gave Coconspirator 1 cash in return for Coconspirator 1

26  disclosing, without authorization, Confidential Information.

27  Initially, from on or before January 1, 2009 through on or about
August 27, 2010, at FLOWERS' request Coconspirator 1 periodically

28  provided Confidential Information without receiving payment.  Over

time, FLOWERS' requests for Confidential Information became more frequent and extensive. Beginning on or about September 1, 2010, and continuing to at least August 16, 2013, PCC, through its agent FLOWERS, and others conspired to pay, and paid, Coconspirator 1 money in exchange for Coconspirator 1 providing Confidential Information to FLOWERS.

From September 2, 2010 through August 16, 2013, at a bank branch located in California, FLOWERS deposited $500 in cash, typically $500 once a month in 2010 and 2011, $500 twice a month in 2012, and $500 two or three times a month in 2013, into a bank account controlled by Coconspirator 1. Beginning in the fall of 2010 and continuing through August 27, 2013, FLOWERS received payments from PCC and others for the Confidential Information provided by Coconspirator 1. Specifically, for every fifty Social Security numbers ("SSNs") for which FLOWERS obtained quarterly wage information per employer from Coconspirator 1, PCC paid FLOWERS $500. Intending to benefit PCC and others, FLOWERS used a portion of those payments to pay Coconspirator 1 for the Confidential Information.

FLOWERS and others searched and caused others to search servers in order to identify and generate lists of SSNs of individuals owing money on accounts serviced by PCC. FLOWERS then sent Coconspirator 1 lists of debtors' SSNs via facsimile, text and email. Thereafter, Coconspirator 1 accessed GUIDE and the federal and state databases to determine whether an employer had reported Confidential Information for each individual SSN. Coconspirator 1 then sent FLOWERS Confidential Information for each SSN. Where no Confidential Information was located, Coconspirator 1 would advise FLOWERS that "no wages" existed for specified SSNs.

The Confidential Information, that is, wage and earning information broken down by quarter, employer and SSN, purchased from Coconspirator 1 was not available to the public. FLOWERS' payments to Coconspirator 1 enabled PCC and others to obtain quarterly wage information per employer for thousands of debtors several times a week for several years. Flowers used the Confidential Information to analyze the collectability of each debtor's debt by using it to determine if a debtor was employed, a debtor's employer(s) per quarter, a debtor's wages and earnings per quarter, and a debtor's ability to pay the debt owed. FLOWERS used the Confidential Information to determine whether it would make financial sense for PCC and others to sue a debtor in an effort to obtain a judgment and attach wages. From at least January 1, 2013 through August 27, 2013, the Confidential Information obtained by FLOWERS through Coconspirator 1 assisted PCC's efforts to collect $946,770 in debts owed. PCC paid FLOWERS a commission of $94,677; which was, ten percent of the collections brought in through the scheme from January 1, 2013 through August 27, 2013.

In furtherance of the conspiracy, on April 17, 2013 FLOWERS sent Coconspirator 1 an email referencing "NEW RUSH LIST DATED 4/17/13 MFLOWERS ALL STATES PRINT OUT" that provided SSNs for numerous individuals, including an individual with SSN XXX-XX-6128 ("Individual A"). On April 18, 2013, FLOWERS received from Coconspirator 1 a facsimile referencing "Mike Flowers Rush List (2nd) and providing quarterly wage and earnings information per employer for Individual A. The same day, FLOWERS and others caused to be entered in to PCC's database Confidential Information for Individual A, including the comment "WRKS FOR FENCING" along with Individual A's earnings as of the fourth quarter of 2012. On about April 18, 2013, as payment for obtaining Confidential Information from Coconspirator 1, from a bank branch in California, defendant FLOWERS deposited $500 in cash into Coconspirator 1's JPMorgan Chase bank account.

PCC recognizes and stipulates that DES received in excess of $10,000 in federal funds during each one-year period from at least January 1, 2010 through December 31, 2013.

### SENTENCING FACTORS

12. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

//
//
//

13.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 12 | U.S.S.G. § 2C1.1(a)(2) |
| Specific Offense Characteristics | | |
| Multiple Bribes | +2 | U.S.S.G. § 2C1.1(b)(1) |
| Value of the Benefit Received More than $15,000, but less than $450,000 | +14 | U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(B) |
| Sub-Total: | 18 | |
| Offense Level Fine Table of 18 Base Fine Amount | $350,000 | U.S.S.G. §§ 8C2.4(b-d) |

Culpability Score Calculation:

| | | |
|---|---|---|
| Base Culpability Score | +5 | U.S.S.G § 8C2.5(a) |

Aggravating Factors:

| | | |
|---|---|---|
| Less than 200 employees | +0 | U.S.S.G § 8C2.5(b) |
| Prior History of Misconduct | +0 | U.S.S.G § 8C2.5(c) |
| Violation of an Order: | +0 | U.S.S.G § 8C2.5(d) |
| Obstruction of Justice: | +0 | U.S.S.G § 8C2.5(e) |

Mitigating Factors:

| | | |
|---|---|---|
| Effective Compliance & Ethics Program | -0 | U.S.S.G § 8C2.5(f) |
| Self-Reporting: | -0 | U.S.S.G § 8C2.5(g)(1) |
| Cooperation: | -0 | U.S.S.G § 8C2.5(g)(2) |

Self-Reporting, Cooperation,

Acceptance                          -1        U.S.S.G § 8C2.5(g)(3)

Culpability Score:                  4

Maximum & Minimum Multipliers

Culpability Score (4)
Minimum Multiplier (.80)
Maximum Multiplier (1.60)   USSG § 8C2.6.

Fines Based on Value of Bribe Payments

Minimum Fine:
$280,000 = $350,000 (Base Fine) x .80 (Minimum Multiplier)

Maximum Fine:
$560,000 = $350,000 (Base Fine) x 1.6 (Maximum Multiplier)

14.   Subject to paragraph 28, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.   Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

The parties agree to recommend that a fine of $350,000 is appropriate. A fine of $350,000 is a fine at the low-end of the applicable advisory fine range based on the value of the bribe payments ($26,000) as opposed to a fine calculated using the value of

13

the $940,677 in Forfeited Funds, i.e., the $940,677 in funds
collected by PCC from January 1, 2013 through August 27, 2013.

### WAIVER OF CONSTITUTIONAL RIGHTS

15. Defendant understands that by pleading guilty, defendant
gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be presumed innocent and to have the
burden of proof placed on the government to prove defendant guilty
beyond a reasonable doubt.

d. The right to confront and cross-examine witnesses
against defendant.

e. The right to testify and to present evidence in
opposition to the charges, including the right to compel the
attendance of witnesses to testify.

f. The right not to be compelled to testify, and, if
defendant chose not to testify or present evidence, to have that
choice not be used against defendant.

g. Any and all rights to pursue any affirmative defenses,
Fourth Amendment or Fifth Amendment claims, and other pretrial
motions that have been filed or could be filed.

### WAIVER OF VENUE

16. Having been fully advised by defendant's attorney regarding
the requirements of venue with respect to the offenses to which
defendant is pleading guilty, to the extent the offenses to which
defendant is pleading guilty were committed, begun, or completed
outside the Central District of California, defendant knowingly,
voluntarily, and intelligently waives, relinquishes, and gives up:

14

1  (a) any right that defendant might have to be prosecuted only in the

2  district where the offenses to which defendant is pleading guilty

3  were committed, begun, or completed; and (b) any defense, claim, or

4  argument defendant could raise or assert based upon lack of venue

5  with respect to the offenses to which defendant is pleading guilty.

6                     WAIVER OF STATUTE OF LIMITATIONS

7       17.  Having been fully advised by defendant's attorney regarding

8  application of the statute of limitations to the offenses to which

9  defendant is pleading guilty, defendant hereby knowingly,

10  voluntarily, and intelligently waives, relinquishes, and gives up:

11  (a) any right that defendant might have not to be prosecuted for the

12  offenses to which defendant is pleading guilty because of the

13  expiration of the statute of limitations for those offenses prior to

14  the filing of the information alleging those offenses; and (b) any

15  defense, claim, or argument defendant could raise or assert that

16  prosecution of the offenses to which defendant is pleading guilty is

17  barred by the expiration of the applicable statute of limitations,

18  pre-indictment delay, or any speedy trial violation.

19                     WAIVER OF APPEAL OF CONVICTION

20       18.  Defendant understands that, with the exception of an appeal

21  based on a claim that defendant's guilty plea were involuntary, by

22  pleading guilty defendant is waiving and giving up any right to

23  appeal defendant's conviction on the offense to which defendant is

24  pleading guilty.

25                 LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

26       19.  Defendant agrees that, provided the Court imposes a

27  sentence of no more than five years probation, defendant gives up the

28  right to appeal all of the following: (a) the procedures and

                                    15

1  calculations used to determine and impose any portion of the

2  sentence; (b) the term of probation imposed by the Court, provided it

3  is within the statutory maximum; (c) the fine imposed by the court,

4  provided it is no more than $560,000 and is within the statutory

5  maximum; (d) the amount and terms of any money judgment order,

6  provided it requires payment of no more than $946,770; and (e) any of

7  the following conditions of probation imposed by the Court: the

8  conditions set forth in General Orders 318, 01-05, and/or 05-02 of

9  this Court.

10  20.  The USAO agrees that, provided (a) all portions of the

11  sentence are at or below the statutory maximum specified above and

12  (b) the Court imposes a two-year term of probation or more, the USAO

13  gives up its right to appeal any portion of the sentence, with the

14  exception that the USAO reserves the right to appeal the amount of

15  the money judgment ordered if that amount is less than $946,770.

16  RESULT OF WITHDRAWAL OF GUILTY PLEA

17  21.  Defendant agrees that if, after entering a guilty plea

18  pursuant to this agreement, defendant seeks to withdraw and succeeds

19  in withdrawing defendant's guilty plea on any basis other than a

20  claim and finding that entry into this plea agreement was

21  involuntary, then (a) the USAO will be relieved of all of its

22  obligations under this agreement; and (b) should the USAO choose to

23  pursue any charge or any civil, administrative, or regulatory action

24  that was either dismissed or not filed as a result of this agreement,

25  then (i) any applicable statute of limitations will be tolled between

26  the date of defendant's signing of this agreement and the filing

27  commencing any such action; and (ii) defendant waives and gives up

28  all defenses based on the statute of limitations, any claim of pre-

1    indictment delay, or any speedy trial claim with respect to any such

2    action, except to the extent that such defenses existed as of the

3    date of defendant's signing this agreement.

4                    RESULT OF VACATUR, REVERSAL OR SET-ASIDE

5        22.   Defendant agrees that if the count of conviction is

6    vacated, reversed, or set aside, both the USAO and defendant will be

7    released from all their obligations under this agreement.

8                        EFFECTIVE DATE OF AGREEMENT

9        23.   This agreement is effective upon signature and execution of

10   all required certifications by defendant, defendant's counsel, and an

11   Assistant United States Attorney.

12                          BREACH OF AGREEMENT

13       24.   Defendant agrees that if defendant, at any time after the

14   signature of this agreement and execution of all required

15   certifications by defendant, defendant's counsel, and an Assistant

16   United States Attorney, knowingly violates or fails to perform any of

17   defendant's obligations under this agreement ("a breach"), the USAO

18   may declare this agreement breached.  All of defendant's obligations

19   are material, a single breach of this agreement is sufficient for the

20   USAO to declare a breach, and defendant shall not be deemed to have

21   cured a breach without the express agreement of the USAO in writing.

22   If the USAO declares this agreement breached, and the Court finds

23   such a breach to have occurred, then: (a) if defendant has previously

24   entered a guilty plea pursuant to this agreement, defendant will not

25   be able to withdraw the guilty plea, and (b) the USAO will be

26   relieved of all its obligations under this agreement.

27       25.   Following the Court's finding of a knowing breach of this

28   agreement by defendant, should the USAO choose to pursue any charge

1  or any civil, administrative, or regulatory action that was either
2  dismissed or not filed as a result of this agreement, then:

3      a.   Defendant agrees that any applicable statute of
4  limitations is tolled between the date of defendant's signing of this
5  agreement and the filing commencing any such action.

6      b.   Defendant waives and gives up all defenses based on
7  the statute of limitations, any claim of pre-indictment delay, or any
8  speedy trial claim with respect to any such action, except to the
9  extent that such defenses existed as of the date of defendant's
10 signing this agreement.

11     c.   Defendant agrees that: (i) any statements made by
12 defendant, under oath, at the guilty plea hearing (if such a hearing
13 occurred prior to the breach); (ii) the agreed to factual basis
14 statement in this agreement; and (iii) any evidence derived from such
15 statements, shall be admissible against defendant in any such action
16 against defendant, and defendant waives and gives up any claim under
17 the United States Constitution, any statute, Rule 410 of the Federal
18 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
19 Procedure, or any other federal rule, that the statements or any
20 evidence derived from the statements should be suppressed or are
21 inadmissible.

22                  COURT AND PROBATION OFFICE NOT PARTIES

23     26.  Defendant understands that the Court and the United States
24 Probation Office are not parties to this agreement and need not
25 accept any of the USAO's sentencing recommendations or the parties'
26 agreements to facts or sentencing factors.

27     27.  Defendant understands that both defendant and the USAO are
28 free to: (a) supplement the facts by supplying relevant information

                                    18

1  to the United States Probation Office and the Court, (b) correct any

2  and all factual misstatements relating to the Court's Sentencing

3  Guidelines calculations and determination of sentence, and (c) argue

4  on appeal and collateral review that the Court's Sentencing

5  Guidelines calculations and the sentence it chooses to impose are not

6  error, although each party agrees to maintain its view that the

7  calculations in paragraph 13 are consistent with the facts of this

8  case.    While this paragraph permits both the USAO and defendant to

9  submit full and complete factual information to the United States

10 Probation Office and the Court, even if that factual information may

11 be viewed as inconsistent with the facts agreed to in this agreement,

12 this paragraph does not affect defendant's and the USAO's obligations

13 not to contest the facts agreed to in this agreement.

14     28.   Defendant understands that even if the Court ignores any

15 sentencing recommendation, finds facts or reaches conclusions

16 different from those agreed to, and/or imposes any sentence up to the

17 maximum established by statute, defendant cannot, for that reason,

18 withdraw defendant's guilty plea, and defendant will remain bound to

19 fulfill all defendant's obligations under this agreement.   Defendant

20 understands that no one -- not the prosecutor, defendant's attorney,

21 or the Court -- can make a binding prediction or promise regarding

22 the sentence defendant will receive, except that it will be within

23 the statutory maximum.

24                        NO ADDITIONAL AGREEMENTS

25     29.   Defendant understands that, except as set forth herein,

26 there are no promises, understandings, or agreements between the USAO

27 and defendant or defendant's attorney, and that no additional

28

1   promise, understanding, or agreement may be entered into unless in a

2   writing signed by all parties or on the record in court.

3                  PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4          30.    The parties agree that this agreement will be considered

5   part of the record of defendant's guilty plea hearing as if the

6   entire agreement had been read into the record of the proceeding.

7   AGREED AND ACCEPTED

8   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
9   CALIFORNIA

10  SANDRA R. BROWN
    Acting United States Attorney

11

12  _____        9/24/2017
                                            _____
13  ELISA FERNÁNDEZ                         Date
    Assistant United States Attorney

14

15          SEE NEXT PAGE

16  _____        _____
    DEFENDANT                               Date

17

18  BY:  CLARK GAREN

19  TITLE:  Vice President & General
    Counsel of Professional Collection
20  Consultants
    Authorized Representative of
21  Professional Collection Consultants

22          SEE NEXT PAGE

23  _____        _____
    DAVID W. WIECHERT                       Date
24  Attorney for Defendant Professional
    Collection Consultants

25

26                      CERTIFICATION OF DEFENDANT

27      I have been authorized by defendant Professional Collection

28  Consultants ("defendant") to enter into this agreement on behalf of

                                    20

1   promise, understanding, or agreement may be entered into unless in a

2   writing signed by all parties or on the record in court.

3   <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4       30.  The parties agree that this agreement will be considered

5   part of the record of defendant's guilty plea hearing as if the

6   entire agreement had been read into the record of the proceeding.

7   AGREED AND ACCEPTED

8   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
9   CALIFORNIA

10  SANDRA R. BROWN
    Acting United States Attorney

11

12  _____     _____
    ELISA FERNANDEZ                     Date
13  Assistant United States Attorney

14

15

16  _____     _____
    DEFENDANT                           Date
17

18  BY:  CLARK GAREN

19  TITLE:  Vice President & General
    Counsel of Professional Collection
20  Consultants
    Authorized Representative of
21  Professional Collection Consultants

22

23  _____     _____
    DAVID W. WIECHERT                   Date
24  Attorney for Defendant Professional
    Collection Consultants

25

26  <u>CERTIFICATION OF DEFENDANT</u>

27      I have been authorized by defendant Professional Collection

28  Consultants ("defendant") to enter into this agreement on behalf of

1  defendant.  I have read this agreement in its entirety.  I have had

2  enough time to review and consider this agreement, and I have

3  carefully and thoroughly discussed every part of it with my attorney.

4  I understand the terms of this agreement, and I voluntarily agree to

5  those terms.  I have discussed the evidence with my attorney, and my

6  attorney has advised me of my rights, of possible pretrial motions

7  that might be filed, of possible defenses that might be asserted

8  either prior to or at trial, of the sentencing factors set forth in

9  18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,

10  and of the consequences of entering into this agreement.  No

11  promises, inducements, or representations of any kind have been made

12  to me other than those contained in this agreement.  No one has

13  threatened or forced me in any way to enter into this agreement.  I

14  am satisfied with the representation of my attorney in this matter,

15  and I am pleading guilty because I am guilty of the charges and wish

16  to take advantage of the promises set forth in this agreement, and

17  not for any other reason.

18

19  DEFENDANT                                        Date

20  BY:  CLARK GAREN

21  TITLE: Vice President & General
    Counsel of Professional Collection
22  Consultants
    Authorized Representative of
23  Professional Collection
    Consultants

24

25          CERTIFICATION OF DEFENDANT'S ATTORNEY

26      I am Professional Collection Consultant's attorney.  I have

27  carefully and thoroughly discussed every part of this agreement with

28  my client.  Further, I have fully advised my client of its rights, of

                                21

1   possible pretrial motions that might be filed, of possible defenses

2   that might be asserted either prior to or at trial, of the sentencing

3   factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing

4   Guidelines provisions, and of the consequences of entering into this

5   agreement.  To my knowledge: no promises, inducements, or

6   representations of any kind have been made to my client other than

7   those contained in this agreement; no one has threatened or forced my

8   client in any way to enter into this agreement; my client's decision

9   to enter into this agreement is an informed and voluntary one; and

10  the factual basis set forth in this agreement is sufficient to

11  support my client's entry of a guilty plea pursuant to this

12  agreement.

13

14  DAVID W. WIECHERT                          9/28/2017
    Attorney for Defendant Professional        Date

15  Collection Consultants

16

17

18

19

20

21

22

23

24

25

26

27

28

                              22