SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
ELISA FERNANDEZ (Cal. Bar No. 172004)
Assistant United States Attorney
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-7383
    Facsimile: (213) 894-8601
    E-mail:   elisa.fernandez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 17-732-SJO |
| Plaintiff, | AMENDED |
| | PLEA AGREEMENT FOR DEFENDANT |
| v. | PROFESSIONAL COLLECTION |
| | CONSULTANTS |
| PROFESSIONAL COLLECTION CONSULTANTS, | |
| Defendant. | |

1.   This constitutes the plea agreement between defendant
Professional Collection Consultants ("PCC" or "defendant") and the
United States Attorney's Office for the Central District of
California (the "USAO") in the investigation of a conspiracy to
corruptly give, offer to give, and agree to give something of value,
namely, money, to a person with intent to influence and reward an
agent of an agency of the State of Arizona, which received in excess
of $10,000 in federal funds during each one-year period from at least
January 1, 2010 through December 31, 2013, in connection with a
business, transaction, and series of transactions of the Arizona

state agency, having a value of $5,000 or more, that is, accessing a federal information platform and federal and state databases to obtain and disclose information without authorization to an employee and agent of the defendant, that is quarterly wage and earnings information for specified individuals, in violation of 18 U.S.C. Section 371.   This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

2.   Defendant understands and agrees that this Agreement is part of a "package deal" in which the disposition of the case against defendant is tied to and conditioned on the disposition of the case against Michael S. Flowers and others.   Accordingly, defendant and the USAO agree that this Agreement and the obligations it creates will not become binding on the USAO and defendant unless and until by no later than January 31, 2018: (a) defendant executes this Agreement and enters a guilty plea in accordance with this Agreement;  (b) Michael S. Flowers enters a guilty plea in accordance with a separate plea agreement; and (c) non-prosecution agreements are signed with two others.   Defendant acknowledges that defendant has discussed with defendant's attorney, and carefully considered, the possible advantages and disadvantages to defendant of entering into this Agreement as part of the package deal; defendant is entering into this Agreement as part of the package deal freely and voluntarily because defendant believes this Agreement and the package deal to be in defendant's best interests; and defendant is not entering into this Agreement as part of the package deal because of threats, coercion, or other undue influence by the USAO or by the other

defendants who are part of the package deal, their counsel, or anyone acting on their behalf.

DEFENDANT'S OBLIGATIONS

3.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with conspiracy to commit federal program bribery in violation of 18 U.S.C. § 371.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h.   Recommend the court order defendant to pay a fine of $350,000. Within 7 days of the filing of this plea agreement with the court, PCC will deposit the sum of $350,000 into the client trust

3

account of attorney David W. Wiechert. Attorney David W. Wiechert will hold the $350,000 in trust until the clerk of court assigns a criminal case number to the above matter. No later than five (5) days from the assignment of a criminal case number, Attorney David W. Wiechert will promptly deposit the sum of $350,000 with the Clerk of the Court, Fiscal Section.

    i.    File within thirty days (30) days of the Court's entry of a money order of forfeiture, as set forth in paragraph 4, below, all forms noticing the California Secretary of State that the defendant has elected to wind up, terminate and dissolve as a California stock corporation, including, but not limited to the filing of a Certificate of Election – Stock and a Certificate of Dissolution.

    4.    Defendant further agrees:

    a.    To the Court's entry of a money order of forfeiture against defendant, at or before sentencing, for $946,770.

    b.    To remit the amount of $946,770 (the "Forfeited Funds") to the United States no later than seven (7) days after the signing of this plea agreement, which funds shall be applied to satisfy the money judgment to be entered against defendant. The Forfeited Funds shall be remitted by check payable to the "United States Marshals Service," and shall be delivered to AUSA Elisa Fernandez

    c.    To take whatever steps are necessary to pass to the United States clear title to the Forfeited Funds, including, without limitation, the execution of a stipulation for entry of the money judgment described above, and the completing of any other legal

4

1  documents required for the transfer of title of the Forfeited Funds
2  to the United States.

3      d.   Not to contest any administrative forfeiture
4  proceedings or civil judicial proceedings commenced against the
5  Forfeited Funds pursuant to 18 U.S.C. § 981, should the government
6  opt to proceed against the Forfeited Funds in either manner.  With
7  respect to a money judgment for the Forfeited Funds described in this
8  plea agreement, defendant waives the requirements of Federal Rules of
9  Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture
10 in the charging instrument, announcement of the forfeiture at
11 sentencing, and incorporation of the forfeiture in the judgment.
12 Defendant acknowledges that forfeiture of the Forfeited Funds is part
13 of the sentence that may be imposed in this case and waives any
14 failure by the Court to advise defendant of this, pursuant to Federal
15 Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts
16 defendant's guilty plea.

17     e.   Not to assist any other individual in any effort
18 falsely to contest the forfeiture of the Forfeited Funds.

19     f.   That forfeiture of the Forfeited Funds shall not be
20 counted toward satisfaction of any special assessment, fine, costs,
21 or other penalty the Court may impose.

22                    THE USAO'S OBLIGATIONS

23 5.   The USAO agrees to:

24     a.   Not contest facts agreed to in this agreement.

25     b.   Abide by all agreements regarding sentencing contained
26 in this agreement.

27     c.   At the time of sentencing, provided that defendant
28 demonstrates an acceptance of responsibility for the offense up to

                              5

1  and including the time of sentencing, recommend a two-level reduction
2  in the applicable Sentencing Guidelines offense level, pursuant to
3  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
4  additional one-level reduction if available under that section.

5          d.    Recommend the court order defendant to pay a fine of
6  $350,000.

7          e.    Except for criminal tax violations (including
8  conspiracy to commit such violations chargeable under 18 U.S.C.
9  § 371), not further criminally prosecute defendant for violations of
10 18 U.S.C. § 666(a)(1)(B), (a)(2), bribery concerning programs
11 receiving federal funds; 18 U.S.C. § 1343, wire fraud; 18 U.S.C. §
12 1346, and honest services fraud; 18 U.S.C. § 981(a)(1)(C), arising
13 out of defendant's conduct described in the agreed-to factual basis
14 set forth in paragraph 11 below.  Defendant understands that the USAO
15 is free to criminally prosecute defendant for any other unlawful past
16 conduct or any unlawful conduct that occurs after the date of this
17 agreement.  Defendant agrees that at the time of sentencing the Court
18 may consider any uncharged conduct in determining the applicable
19 Sentencing Guidelines range, the propriety and extent of any
20 departure from that range, and the sentence to be imposed after
21 consideration of the Sentencing Guidelines and all other relevant
22 factors under 18 U.S.C. § 3553(a).

23                    CORPORATE AUTHORIZATION

24     6.    Defendant represents that it is authorized to enter into
25 this agreement.  On or before the change of plea hearing pursuant to
26 this agreement, defendant shall provide the USAO and the Court with a
27 notarized legal document certifying that defendant is authorized to
28 enter into and comply with all of the provisions of this agreement.

1   Such resolution(s) shall designate a company representative who is
2   authorized to take the actions specified in this agreement, and shall
3   also state that all legal formalities for such authorizations have
4   been observed.

5                ORGANIZATIONAL CHANGES AND APPLICABIITY

6        7.   This agreement shall bind defendant, its successor entities
7   (if any), and any other person or entity that assumes the liabilities
8   contained herein ("successors-in-interest").  Defendant or its
9   successors-in-interest, if applicable, shall provide the USAO and the
10  United States Probation Office for the Central District of California
11  with immediate notice of any name change, business reorganization,
12  sale or purchase of assets, divestiture of assets, or similar action
13  impacting their ability to pay the fine or affecting this agreement.
14  No change in name, change in corporate or individual control,
15  business reorganization, change in ownership, merger, change of legal
16  status, sale or purchase of assets, or similar action shall alter
17  defendant's responsibilities under this agreement.  Defendant shall
18  not engage in any action to seek to avoid the obligations and
19  conditions set forth in this agreement.

20                    NATURE OF THE OFFENSE

21       8.   Defendant understands that for defendant to be guilty of
22  the crime charged in Count One of the Information, that is,
23  conspiracy to commit federal program bribery in violation of Title
24  18, United States Code, Section 371, the following must be true:

25            a.   First, beginning on or about a date unknown, but at
26  least commencing on or before September 1, 2010 and ending on or
27  about August 27, 2013, there was an agreement between two or more
28  persons to commit federal program bribery;

                              7

b.    Second, defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and,

c.    Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

PENALTIES

9.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: five years probation; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

SUSPENSION, REVOCATION, AND DEBARMENT

10.    Defendant understands that if defendant holds any regulatory licenses or permits, the conviction in this case may result in the suspension or revocation of those licenses and permits. The USAO makes no representation or promise concerning suspension or debarment of defendant from contracting with the United States or with any office, agency, or department thereof.    Suspension and debarment of organizations convicted under various federal environmental protection and criminal statues is a discretionary administrative action solely within the authority of the federal contracting agencies.    Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

11.    Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.    Defendant and the USAO agree to the statement of facts provided below and agree

8

1  that this statement of facts is sufficient to support a plea of
2  guilty to the charge described in this agreement and to establish the
3  Sentencing Guidelines factors set forth in paragraph 13 below but is
4  not meant to be a complete recitation of all facts relevant to the
5  underlying criminal conduct or all facts known to either party that
6  relate to that conduct.

8      Beginning on or before September 1, 2010, and continuing to at
   least August 27, 2013, defendant PROFESSIONAL COLLECTION CONSULTANTS
9  ("PCC"), through an agent of PCC, and others conspired to corruptly
   give Coconspirator 1, an agent of a State agency, cash in exchange
10 for wage and earnings information per quarter and per employer for
   specific Social Security numbers (collectively referred to as
11 "Confidential Information").

12     During the scope of the conspiracy, PCC was a California
   corporation that operated as a debt collection company located at
13 6700 S. Centinela Avenue, 3rd Floor, Los Angeles, California.
   Codefendant Michael S. Flowers, aka "Michael Flower" ("FLOWERS"), was
14 an employee and an agent of PCC.  FLOWERS worked as a debt collector
15 for PCC.  FLOWERS' responsibilities included determining the
   collectability of debts serviced by PCC by searching massive public
16 and private/proprietary (pay for use) databases to locate debtors'
   addresses and publically available information about each debtors'
17 financial resources.

18     From at least 2006 through August 27, 2013, Coconspirator 1 was
19 an employee and agent of the Arizona Department of Economic Security
   ("DES"), an agency of the government of the State of Arizona that
20 provided unemployment insurance ("UI") benefits.  DES maintained
   unemployment data, wage and earning information, and processed UI
21 benefits using an information system ("GUIDE"), which was linked with
   federal and state databases that contained Confidential Information
22 for individuals in all fifty states.  As an employee and agent of
23 DES, and in his role as a public official, Coconspirator 1 had access
   to GUIDE and federal and state databases to locate Confidential
24 Information.

25     During the course of the conspiracy, FLOWERS and others offered
26 and gave Coconspirator 1 cash in return for Coconspirator 1
   disclosing, without authorization, Confidential Information.
27 Initially, from on or before January 1, 2009 through on or about
   August 27, 2010, at FLOWERS' request Coconspirator 1 periodically
28 provided Confidential Information without receiving payment.  Over

1   time, FLOWERS' requests for Confidential Information became more
2   frequent and extensive. Beginning on or about September 1, 2010, and
    continuing to at least August 16, 2013, PCC, through its agent
3   FLOWERS, and others conspired to pay, and paid, Coconspirator 1 money
    in exchange for Coconspirator 1 providing Confidential Information to
4   FLOWERS.

5       From September 2, 2010 through August 16, 2013, at a bank branch
    located in California, FLOWERS deposited $500 in cash, typically $500
6   once a month in 2010 and 2011, $500 twice a month in 2012, and $500
    two or three times a month in 2013, into a bank account controlled by
7   Coconspirator 1.  Beginning in the fall of 2010 and continuing
8   through August 27, 2013, FLOWERS received payments from PCC and
    others for the Confidential Information provided by Coconspirator 1.
9   Specifically, for every fifty Social Security numbers ("SSNs") for
    which FLOWERS obtained quarterly wage information per employer from
10  Coconspirator 1, PCC paid FLOWERS $500.  Intending to benefit PCC and
    others, FLOWERS used a portion of those payments to pay Coconspirator
11  1 for the Confidential Information.

12
        FLOWERS and others searched and caused others to search servers
13  in order to identify and generate lists of SSNs of individuals owing
    money on accounts serviced by PCC.  FLOWERS then sent Coconspirator 1
14  lists of debtors' SSNs via facsimile, text and email.  Thereafter,
    Coconspirator 1 accessed GUIDE and the federal and state databases to
15  determine whether an employer had reported Confidential Information
16  for each individual SSN.  Coconspirator 1 then sent FLOWERS
    Confidential Information for each SSN.  Where no Confidential
17  Information was located, Coconspirator 1 would advise FLOWERS that
    "no wages" existed for specified SSNs.
18

19      The Confidential Information, that is, wage and earning
    information broken down by quarter, employer and SSN, purchased from
20  Coconspirator 1 was not available to the public.  FLOWERS' payments
    to Coconspirator 1 enabled PCC and others to obtain quarterly wage
21  information per employer for thousands of debtors several times a
    week for several years.  Flowers used the Confidential Information to
22  analyze the collectability of each debtor's debt by using it to
    determine if a debtor was employed, a debtor's employer(s) per
23  quarter, a debtor's wages and earnings per quarter, and a debtor's
    ability to pay the debt owed.  FLOWERS used the Confidential
24  Information to determine whether it would make financial sense for
25  PCC and others to sue a debtor in an effort to obtain a judgment and
    attach wages.  From at least January 1, 2013 through August 27, 2013,
26  the Confidential Information obtained by FLOWERS through
    Coconspirator 1 assisted PCC's efforts to collect $946,770 in debts
27  owed.  PCC paid FLOWERS a commission of $94,677; which was, ten
    percent of the collections brought in through the scheme from January
28  1, 2013 through August 27, 2013.

In furtherance of the conspiracy, on April 17, 2013 FLOWERS sent Coconspirator 1 an email referencing "NEW RUSH LIST DATED 4/17/13 MFLOWERS ALL STATES PRINT OUT" that provided SSNs for numerous individuals, including an individual with SSN XXX-XX-6128 ("Individual A").  On April 18, 2013, FLOWERS received from Coconspirator 1 a facsimile referencing "Mike Flowers Rush List (2nd) and providing quarterly wage and earnings information per employer for Individual A.  The same day, FLOWERS and others caused to be entered in to PCC's database Confidential Information for Individual A, including the comment "WRKS FOR FENCING" along with Individual A's earnings as of the fourth quarter of 2012.  On about April 18, 2013, as payment for obtaining Confidential Information from Coconspirator 1, from a bank branch in California, defendant FLOWERS deposited $500 in cash into Coconspirator 1's JPMorgan Chase bank account.

PCC recognizes and stipulates that DES received in excess of $10,000 in federal funds during each one-year period from at least January 1, 2010 through December 31, 2013.

SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

//

//

//

1    13.    Defendant and the USAO agree to the following applicable

2    Sentencing Guidelines factors:

3    | Base Offense Level: | 12 | U.S.S.G. § 2C1.1(a)(2) |

4    Specific Offense
     Characteristics

5
6    | Multiple Bribes | +2 | U.S.S.G. § 2C1.1(b)(1) |

7
8    | Value of the Benefit Received More than $15,000, but less than $450,000 | +14 | U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(B) |
9

10   | Sub-Total: | 18 | |

11   | Offense Level Fine Table of 18 Base Fine Amount | $350,000 | U.S.S.G. §§ 8C2.4(b-d) |
12

13   Culpability Score Calculation:

14

15   | Base Culpability Score | +5 | U.S.S.G § 8C2.5(a) |

16
17   Aggravating Factors:

18   | Less than 200 employees | +0 | U.S.S.G § 8C2.5(b) |

19   | Prior History of Misconduct | +0 | U.S.S.G § 8C2.5(c) |

20   | Violation of an Order: | +0 | U.S.S.G § 8C2.5(d) |

21   | Obstruction of Justice: | +0 | U.S.S.G § 8C2.5(e) |

22

23   Mitigating Factors:

24   | Effective Compliance & Ethics Program | -0 | U.S.S.G § 8C2.5(f) |
25
26   | Self-Reporting: | -0 | U.S.S.G § 8C2.5(g)(1) |

27   | Cooperation: | -0 | U.S.S.G § 8C2.5(g)(2) |

28   Self-Reporting, Cooperation,

12

Acceptance                          -1        U.S.S.G § 8C2.5(g)(3)

Culpability Score:               4

Maximum & Minimum Multipliers

Culpability Score (4)
Minimum Multiplier (.80)
Maximum Multiplier (1.60)  USSG § 8C2.6.

Fines Based on Value of Bribe Payments

Minimum Fine:
$280,000 = $350,000 (Base Fine) x .80 (Minimum Multiplier)

Maximum Fine:
$560,000 = $350,000 (Base Fine) x 1.6 (Maximum Multiplier)

14.   Subject to paragraph 28, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

The parties agree to recommend that a fine of $350,000 is appropriate. A fine of $350,000 is a fine at the low-end of the applicable advisory fine range based on the value of the bribe payments ($26,000) as opposed to a fine calculated using the value of

1  the $940,677 in Forfeited Funds, i.e., the $940,677 in funds
2  collected by PCC from January 1, 2013 through August 27, 2013.

3                    WAIVER OF CONSTITUTIONAL RIGHTS

4       15.  Defendant understands that by pleading guilty, defendant
5  gives up the following rights:

6            a.   The right to persist in a plea of not guilty.

7            b.   The right to a speedy and public trial by jury.

8            c.   The right to be presumed innocent and to have the
9  burden of proof placed on the government to prove defendant guilty
10 beyond a reasonable doubt.

11           d.   The right to confront and cross-examine witnesses
12 against defendant.

13           e.   The right to testify and to present evidence in
14 opposition to the charges, including the right to compel the
15 attendance of witnesses to testify.

16           f.   The right not to be compelled to testify, and, if
17 defendant chose not to testify or present evidence, to have that
18 choice not be used against defendant.

19           g.   Any and all rights to pursue any affirmative defenses,
20 Fourth Amendment or Fifth Amendment claims, and other pretrial
21 motions that have been filed or could be filed.

22                         WAIVER OF VENUE

23      16.  Having been fully advised by defendant's attorney regarding
24 the requirements of venue with respect to the offenses to which
25 defendant is pleading guilty, to the extent the offenses to which
26 defendant is pleading guilty were committed, begun, or completed
27 outside the Central District of California, defendant knowingly,
28 voluntarily, and intelligently waives, relinquishes, and gives up:

                                14

(a) any right that defendant might have to be prosecuted only in the district where the offenses to which defendant is pleading guilty were committed, begun, or completed; and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offenses to which defendant is pleading guilty.

### WAIVER OF STATUTE OF LIMITATIONS

17.   Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offenses to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offenses to which defendant is pleading guilty because of the expiration of the statute of limitations for those offenses prior to the filing of the information alleging those offenses; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offenses to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

### WAIVER OF APPEAL OF CONVICTION

18.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

19.   Defendant agrees that, provided the Court imposes a sentence of no more than five years probation, defendant gives up the right to appeal all of the following: (a) the procedures and

calculations used to determine and impose any portion of the sentence; (b) the term of probation imposed by the Court, provided it is within the statutory maximum; (c) the fine imposed by the court, provided it is no more than $560,000 and is within the statutory maximum; (d) the amount and terms of any money judgment order, provided it requires payment of no more than $946,770; and (e) any of the following conditions of probation imposed by the Court: the conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court.

20.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a two-year term of probation or more, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of the money judgment ordered if that amount is less than $946,770.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

21.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-

16

indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

23.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

24.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.   All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

25.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge

17

or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND PROBATION OFFICE NOT PARTIES

26.    Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.    Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

18

to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

29.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

19

1 | promise, understanding, or agreement may be entered into unless in a
2 | writing signed by all parties or on the record in court.

3 | PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4 | 30. The parties agree that this agreement will be considered
5 | part of the record of defendant's guilty plea hearing as if the
6 | entire agreement had been read into the record of the proceeding.

7 | AGREED AND ACCEPTED

8 | UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
9 | CALIFORNIA

10 | SANDRA R. BROWN
Acting United States Attorney

11 |

12 | _____     12/16/2017
ELISA FERNANDEZ                      Date
13 | Assistant United States Attorney

14 |

15 |                                      12/11/2017
_____
16 | DEFENDANT                            Date

17 |

18 | BY: CLARK GAREN

19 | TITLE: Vice President & General
Counsel of Professional Collection
20 | Consultants
Authorized Representative of
21 | Professional Collection Consultants

22 |                                      12/14/2017
_____
23 | DAVID W. WIECHERT                    Date
Attorney for Defendant Professional
24 | Collection Consultants

25 |

26 | CERTIFICATION OF DEFENDANT

27 | I have been authorized by defendant Professional Collection
28 | Consultants ("defendant") to enter into this agreement on behalf of

20

1  defendant. I have read this agreement in its entirety. I have had
2  enough time to review and consider this agreement, and I have
3  carefully and thoroughly discussed every part of it with my attorney.
4  I understand the terms of this agreement, and I voluntarily agree to
5  those terms. I have discussed the evidence with my attorney, and my
6  attorney has advised me of my rights, of possible pretrial motions
7  that might be filed, of possible defenses that might be asserted
8  either prior to or at trial, of the sentencing factors set forth in
9  18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,
10 and of the consequences of entering into this agreement. No
11 promises, inducements, or representations of any kind have been made
12 to me other than those contained in this agreement. No one has
13 threatened or forced me in any way to enter into this agreement. I
14 am satisfied with the representation of my attorney in this matter,
15 and I am pleading guilty because I am guilty of the charges and wish
16 to take advantage of the promises set forth in this agreement, and
17 not for any other reason.

18

19 DEFENDANT                                    Date  1/9/2018

20 BY:   CLARK GAREN

21 TITLE: Vice President & General
   Counsel of Professional Collection
22 Consultants
   Authorized Representative of
23 Professional Collection
   Consultants

24

25                 CERTIFICATION OF DEFENDANT'S ATTORNEY

26      I am Professional Collection Consultant's attorney. I have

27 carefully and thoroughly discussed every part of this agreement with

28 my client. Further, I have fully advised my client of its rights, of

                                  21

1 | possible pretrial motions that might be filed, of possible defenses
2 | that might be asserted either prior to or at trial, of the sentencing
3 | factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing
4 | Guidelines provisions, and of the consequences of entering into this
5 | agreement.  To my knowledge: no promises, inducements, or
6 | representations of any kind have been made to my client other than
7 | those contained in this agreement; no one has threatened or forced my
8 | client in any way to enter into this agreement; my client's decision
9 | to enter into this agreement is an informed and voluntary one; and
10 | the factual basis set forth in this agreement is sufficient to
11 | support my client's entry of a guilty plea pursuant to this
12 | agreement.

13

14 | DAVID W. WIECHERT                              12-14-17
     Attorney for Defendant Professional              Date
15 | Collection Consultants