1  NICOLA T. HANNA
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   ELISA FERNANDEZ (Cal. Bar No. 172004)
4  Assistant United States Attorney
   Public Corruption & Civil Rights Section
5       1500 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-7383
7       Facsimile: (213) 894-8601
        E-mail:    elisa.fernandez@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          No. CR 17-732-SJO

13          Plaintiff,                 GOVERNMENT'S POSITION RE
                                       SENTENCING OF DEFENDANT
14              v.                     PROFESSIONAL COLLECTION
                                       CONSULTANTS
15  PROFESSIONAL COLLECTION
    CONSULTANTS,                       Hearing Date: April 16, 2018
16                                     Hearing Time: 9:00 a.m.
            Defendant.                 Location:    Courtroom of the
17                                                  Hon. S. JAMES OTERO

18

19       Plaintiff United States of America, by and through its counsel

20  of record, the United States Attorney for the Central District of

21  California and Assistant United States Attorney Elisa Fernandez,

22  hereby files the Government's Position Re: Sentencing of Defendant

23  Professional Collection Consultants.

24       The Government's Position Re: Sentencing Position of Defendant

25  Professional Collection Consultants is based upon the attached

26  //

27  //

28

memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 29, 2018                    Respectfully submitted,

                                         NICOLA T. HANNA
                                         United States Attorney

                                         LAWRENCE S. MIDDLETON
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                         _____/s/_____ *Elisa Fernandez*_____
                                         ELISA FERNANDEZ
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3   **I.   INTRODUCTION**

4          On January 9, 2018, corporate defendant Professional Collection

5   Consultants ("PCC")[1] pled guilty to a single-count Information, which

6   also named codefendant Michael S. Flowers.  Count One of the

7   Information charges a violation of 18 U.S.C. § 371, Conspiracy to

8   Commit Federal Program Bribery in violation of 18 U.S.C. § 666(a)(2).

9   The Information alleged and defendant PCC admitted that from at least

10  September 1, 2010 through at least August 27, 2013, PCC and others

11  paid money to coconspirator 1, an employee and agent of the Arizona

12  Department of Economic Security ("DES"),[2] in exchange for obtaining

13  "confidential information" from federal and state databases.  The

14  confidential information passed to PCC, through Flowers, consisted of

15  employer, quarterly wage and unemployment insurance information for

16  individual SSNs.  PCC, through their employee and agent, Flowers used

17  the confidential information to analyze the collectability of debts

18  owed to PCC or which PCC was assigned to collect.  From at least

19  January 1, 2013 through August 27, 2013, the confidential information

20  obtained by Flowers through coconspirator 1 assisted PCC's efforts to

21  collect $946,770 in debts owed.  PCC paid Flowers a commission of

22

23          [1] The shareholders of PCC included; Chairman of the Board,
Donald K. Hopp who owned 33%; President, Todd Shields who owned 34%;
24  and, Carol K. Hopp who owned 33%.  (PSR ¶ 29.)  PCC's Corporate
Representative, Scott Garen served as vice president and general
25  counsel and owned no shares.  (*Id*.)  Todd Shields also served as the
agent of service of process.  (*Id*.)
26
         [2] At all times relevant to the Information, DES was an agency of
27  the government of the State of Arizona that provided unemployment
insurance ("UI") benefits.  (PSR ¶ 14.)  DES received in excess of
28  $10,000 in federal funds during each one-year period from at least
January 1, 2010 through December 31, 2013.  (PSR ¶ 20.)

1  $94,677; which equaled ten percent of the collections Flowers brought

2  in through the scheme from January 1, 2013 through August 27, 2013.

3  The government requests that a money judgment of $940,770 be entered

4  against PCC and that PCC be ordered to pay a fine of $350,000 and a

5  special assessment of $400.

6

7  **II.   STATEMENT OF FACTS**

8       **A.    The Offense Conduct**

9       At that the change of plea, corporate defendant PCC admitted

10  that on or before September 1, 2010, and continuing to at least

11  August 27, 2013, PCC[3], through Flowers, and others conspired to

12  corruptly give coconspirator 1, an agent of a State agency, money in

13  exchange for employer, unemployment insurance, and wage and earnings

14  information per quarter and per employer (collectively "Confidential

15  Information") for specific SSNs.  (PSR ¶¶ 1-20.)

16       During the scope of the conspiracy, corporate defendant PCC

17  operated as a debt collection company. Codefendant Michael S. Flowers

18  ("Flowers") was an employee and an agent of PCC. (PSR ¶ 13.)  Flowers

19  worked as a debt collector for PCC. Flowers' responsibilities

20  included determining the collectability of debts serviced by PCC by

21  searching massive public and private/proprietary (pay for use)

22  databases to locate debtors1 addresses and publically available

23  information about each debtors' financial resources.  (*Id.*)

24       From at least 2006 through August 27, 2013, coconspirator 1 was

25  an employee and agent of the Arizona Department of Economic Security

26

27

28       [3] At all times relevant to the Information, PCC was a California
corporation located at 6700 S. Centinela Avenue, 3rd Floor, Los
Angeles, California.

2

1    ("DES"), an agency of the government of the State of Arizona that

2    provided unemployment insurance ("UI") benefits. (PSR ¶ 14.)  DES

3    maintained unemployment data, wage and earning information, and

4    processed UI benefits using an information system ("GUIDE"), which

5    was linked with federal and state databases that contained

6    Confidential Information for individuals in all fifty states. As an

7    employee and agent of DES, and in his role as a public official,

8    coconspirator 1 had access to GUIDE and federal and state databases

9    to locate Confidential Information.  (PSR ¶ 14.)

10       Flowers and others offered and gave coconspirator 1 cash in

11   return for coconspirator 1 disclosing, without authorization,

12   Confidential Information. (PSR ¶ 15.)  Beginning on or about

13   September 1, 2010, and continuing to at least August 16, 2013[4], PCC,

14   through its agent Flowers, and others conspired to pay, and paid,

15   coconspirator 1 money in exchange for coconspirator 1 providing

16   Confidential Information to Flowers.  (PSR ¶ 15.)

17       From September 2, 2010 through August 16, 2013, at a bank branch

18   located in California, Flowers deposited $26,000 in bribe payments

19   into a bank account controlled by coconspirator 1.  (PSR ¶ 16.)

20   Typically, Flowers deposited the bribe payments as follows:  in 2010

21   and 2011; $500 once a month; in 2012, $500 twice a month; and, in

22   2013, $500 two or three times a month. (*Id*.)  Flowers received

23   payments from PCC and others for the Confidential Information

24   provided by coconspirator 1.  (*Id*.)  Specifically, for every fifty

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27       [4] From on or before January 1, 2009 through on or about August
     27, 2010, at Flowers' request coconspirator 1 periodically provided
     Confidential Information without receiving payment. (PSR ¶ 15.)  Over
28   time, Flowers' requests for Confidential Information became more
     frequent and extensive.  (*Id*.)

                                    3

1   SSNs for which Flowers obtained quarterly wage information per

2   employer from coconspirator 1, PCC paid Flowers $500. (*Id.*)

3   Intending to benefit PCC and others, Flowers used a portion of those

4   payments to pay coconspirator 1 for the Confidential Information.

5   (*Id.*)

6      Flowers and others searched servers in order to identify and

7   generate lists of SSNs of individuals owing money on accounts

8   serviced by PCC. (PSR ¶ 17.)  Flowers then sent coconspirator 1 lists

9   of debtors' SSNs via facsimile, text and email. (*Id.*)  Coconspirator

10   1 would then access GUIDE and the federal and state databases to

11   determine whether an employer had reported Confidential Information

12   for each individual SSN. (*Id.*)  Coconspirator 1 send Flowers

13   Confidential Information for each SSN. If the databases had no

14   Confidential Information, coconspirator 1 would advise Flowers that

15   "no wages" existed for specified SSNs. (*Id.*)

16      The Confidential Information, that is, wage and earning

17   information broken down by quarter, employer and SSN, purchased from

18   coconspirator 1 was not available to the public. (PSR ¶ 18.)

19   Flowers' payments to coconspirator 1 enabled PCC and others to obtain

20   quarterly wage information per employer for thousands of debtors

21   several times a week for several years. (*Id.*)  Flowers used the

22   Confidential Information to analyze the collectability of each

23   debtor's debt by using it to determine if a debtor was employed, a

24   debtor's employer(s) per quarter, a debtor's wages and earnings per

25   quarter, and a debtor's ability to pay the debt owed. Flowers used

26   the Confidential Information to determine whether it would make

27   financial sense for PCC and others to sue a debtor in an effort to

28   obtain a judgment and attach wages. (*Id.*)

4

From at least January 1, 2013 through August 27, 2013, the Confidential Information obtained by Flowers through coconspirator 1 assisted PCC's efforts to collect $946,770 in debts owed. (PSR ¶ 19.) PCC paid Flowers a commission of $94,677; which was, ten percent of the collections brought in through the scheme from January 1, 2013 through August 27, 2013. (*Id.*)

In furtherance of the conspiracy, on April 17, 2013 Flowers sent coconspirator 1 an email referencing "NEW RUSH LIST DATED 4117113 MFlowers ALL STATES PRINT OUT" that provided SSNs for numerous individuals, including an individual with SSN XXX-XX-6128 ("Individual A"). (PSR ¶ 20.)  On April 18, 2013, Flowers received from coconspirator 1 a facsimile.  (*Id.*)  The facsimile referenced "Mike Flowers Rush List (2nd) and providing quarterly wage and earnings information per employer for Individual A. (*Id.*)  The same day, Flowers and others caused to be entered in to PCC's database Confidential Information for Individual A, including the comment "WRKS FOR FENCING" along with Individual A's earnings as of the fourth quarter of 2012. (*Id.*)  On about April 18, 2013, as payment for obtaining Confidential Information from coconspirator 1, from a bank branch in California, defendant Flowers deposited $500 in cash into coconspirator 1's JPMorgan Chase bank account. (*Id.*)

PCC further stipulated that DES received in excess of $10,000 in federal funds during each one-year period from at least January 1, 2010 through December 31, 2013.  (*Id.*)

5

1       **B.    The Plea Agreement**

2          Pursuant to a written plea agreement[5], the parties agreed to the

3   Sentencing Guideline factors set forth below.  (PSR ¶ 5.)   The

4   parties agreed not to argue for any other specific offense

5   characteristics, adjustments and departures.  (PSR ¶ 5.)   PCC agreed

6   to pay a fine of $350,000 and to forfeit $946,770.  (PSR ¶ 7.)

7               1.    Fine

8          The parties agree that a fine of $350,000 is appropriate. Based

9   on the sentencing guidelines in effect at the time of sentencing, the

10  parties agreed that a fine of $350,000[6] was appropriate. (PSR ¶ 5.)

11  The USPO advised that an ex post facto issue necessitated utilizing

12  the 2012 Guidelines, which were in effect at the time of the offense

13  conduct, to calculate the fine range. (PSR ¶ 47.)   Notwithstanding ex

14  post facto issues, the USPO concluded that the base fine was

15  $350,000.  (PSR ¶ 14.)

16              2.    Forfeiture

17         Pursuant to paragraph 4(a) of the plea agreement, PCC stipulated

18  to the entry of a money order of forfeiture in the amount of

19  $946,770. (Plea agreement ¶4(a).)  PCC remitted $946,770 to the U.S.

20  Marshals service to satisfy the money judgment.  On January 19, 2018,

21  the U.S. Marshals Service deposited the check.  Once the Court enters

22  the "Money Judgment of Forfeiture Against Defendant Professional

23  —————————————————

24         [5] PCC agreed that the agreement was part of a "package deal" in
    which the disposition of the case against PCC was tied to and
25  conditioned on the disposition of the case against Flowers and other.
    (PSR ¶ 6.)

26         [6] At paragraph 14, the parties agreed that an appropriate fine
    was $350,000, a fine at the low-end of the current advisory fine
27  range based on the value of the bribe payments ($26,000).  As opposed
    to a fine calculated using the value of the Forfeited Funds, that is,
28  $940,677 in funds collected by PCC from January 1, 2013 through
    August 27, 2013.

Collection Consultants" in the amount of $946,770 against defendant

PCC, the U.S. Marshals will apply the funds to satisfy the money

judgment. (Docket No. 46, filed March 28, 2018.)

The government respectfully requests the Court to enter

stipulated money judgment of $946,770 against corporate defendant PCC

*prior* to the sentencing date of April 16, 2018. In regards to

forfeiture and the money judgment, the government requests that at

the time of sentencing, the Court advise defendant PCC that: (1) a

money judgment of $946,770 has been entered against PCC; and (2) a

money judgment of $946,770 against PCC is part of PCC's sentence.

### 3.   Sentencing Guidelines

At paragraph 13 of the plea agreement, the parties agreed to the

following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 12 | U.S.S.G. § 2C1.1(a)(2) |
| Specific Offense Characteristics | | |
| Multiple Bribes | +2 | U.S.S.G. § 2C1.1(b)(1) |
| Value of the Benefit Received More than $15,000, but less than $450,000 | +4[7] | U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(B) |
| **Sub-Total:** | **18** | |

//

//

//

//

//

//

---

[7] Due to a clerical error, the plea agreement listed a 14-level increase. (PSR ¶3(c), footnote 1.)

7

```
Offense Level Fine Table of 18
Base Fine Amount                    $350,000   U.S.S.G. §§ 8C2.4(b-d)

Culpability Score Calculation:

Base Culpability Score            +5         U.S.S.G § 8C2.5(a)

Aggravating Factors:

Less than 200 employees           +0         U.S.S.G § 8C2.5(b)
Prior History of Misconduct       +0         U.S.S.G § 8C2.5(c)
Violation of an Order:            +0         U.S.S.G § 8C2.5(d)
Obstruction of Justice:           +0         U.S.S.G § 8C2.5(e)

Mitigating Factors:
Effective Compliance
& Ethics Program                  -0         U.S.S.G § 8C2.5(f)
Self-Reporting:                   -0         U.S.S.G § 8C2.5(g)(1)
Cooperation:                      -0         U.S.S.G § 8C2.5(g)(2)
Self-Reporting, Cooperation,
Acceptance                        -1         U.S.S.G § 8C2.5(g)(3)
```

**Culpability Score:           4**

The parties further agreed not to argue for any other specific offense characteristics, adjustments, and departures.  (PSR ¶4.)


**III. ARGUMENT**

The government requests that the Court sentence PCC consistent with the terms of the plea agreement, that is, enter a money judgment of $946,770 against PCC and order PCC to pay a fine of $350,000.

PCC has admitted that from on or about September 1, 2010 through at least August 16, 2013, it funded the bribe payments made to an Arizona state employee (coconspirator 1) in order to maximize the company's ability to collect debt.  PCC's employee and agent paid $26,000 in bribes directly to conspirator 1 in order to obtain confidential wage, employer and unemployment information into PCC's

8

1 databases.  This information was not available to the public.  PCC

2 and Flowers used the information it purchased from coconspirator 1 to

3 determine the collectability of debts.

4      From January 1, 2009 to August 27, 2010, coconspirator 1

5 provided the information to Flowers/PCC without receiving payment.

6 (PSR ¶15.) Overtime, Flowers and others searched and caused others to

7 search PCC's servers in order to generate lists of SSNs of

8 individuals owning money on accounts served by PCC.  Flowers would

9 then send the SSNs to coconspirator 1.  (PSR ¶17.)  Coconspirator 1

10 would access government databases to determine whether wage, employer

11 and unemployment information existed for each Social Security number.

12 (*Id*.)  Coconspirator 1 would then send the information to Flowers who

13 would enter it into PCC's database.  Using this information, PCC was

14 able to maximize the collectability of debts.  Based on these facts,

15 PCC has admitted that from at least January 1, 2013 through August

16 27, 2013, the Confidential Information obtained by Flowers through

17 coconspirator 1 assisted PCC's efforts to collect $946,770 in debts

18 owed. (PSR ¶ 19.)  PCC paid Flowers a commission of $94,677; which

19 was, ten percent of the collections brought in through the scheme

20 from January 1, 2013 through August 27, 2013. (*Id*.)

21      While the bribery scheme spanned several years (September 2,

22 2010 through August 16, 2010), PCC has admitted to paying bribes to

23 obtain confidential information and agreed to forfeit $940,770 and to

24 pay a fine of $350,000.  As of January 2018, PCC dissolved as a

25 corporation.  (PSR ¶ 40.)

26 //

27 //

28 //

9

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court Order PCC's sentence to consist of the following:

*A Fine of $350,000:*

Order defendant PCC to pay a fine of $350,000.

*Forfeiture & Entry of a $946,770 Money Judgment*:

The government would respectfully request the Court to enter stipulated money judgment of $946,770 against corporate defendant PCC *prior* to the sentencing date of April 16, 2018.  In regards to forfeiture and the money judgment, the government requests that at the time of sentencing, the Court advise defendant PCC that:  (1) a money judgment of $946,770 has been entered against PCC; and (2) a money judgment of $946,770 against PCC is part of PCC's sentence. The government would ask the Judgment and Commitment Order reference the date and amount of money judgment ("946,770) entered against PCC, and that the money judgement is part of PCC's sentence.

*Special Assessment:*

A special assessment of $400 pursuant to 18 U.S.C. §3013(a)(2). (PSR ¶ 73.)

10

**CERTIFICATE OF SERVICE**

I, **N. Vizcarra**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**GOVERNMENT'S POSITION RE: SENTENCING OF**

**DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS**

☐ Placed in a closed envelope for collection and **inter-office delivery**, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via **United States mail**, addressed as follows:

☐ By **hand delivery**, addressed as follows:

☐ By **facsimile**, as follows:

☐ By **messenger**, as follows:

☒ By **E-mail**, as follows:

DWiechert@aol.com

jim@spertuslaw.com

This Certificate is executed on March 30, 2018 at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

/s/
_____
N.Vizcarra
Legal Assistant